UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEENA MOHSEN,<br><br>        Plaintiff,<br><br>  -against-<br><br>NEW YORK CITY POLICE DEPARTMENT OFFICER EDWARD MENDEZ, shield number 689, in his individual capacity; NEW YORK CITY POLICE DEPARTMENT LIEUTENANT PHILIP CHAN, tax registration number 000928052, in his individual capacity; NEW YORK CITY POLICE DEPARTMENT OFFICER KWABENA L. FRASER, shield number 23820, in his individual capacity; NEW YORK CITY POLICE DEPARTMENT DETECTIVE CHRISTOPHER GIARDINA, shield number 4899, in his individual capacity; NEW YORK CITY POLICE DEPARTMENT OFFICERS "JOHN DOES" #1-10, shield numbers and tax registration numbers unknown, in their individual capacities; and THE CITY OF NEW YORK,<br><br>            Defendants. | **COMPLAINT AND JURY TRIAL DEMAND**<br><br>Case No. _____ |

Plaintiff Deena Mohsen, by and through her attorneys, Emery Celli Brinckerhoff

Abady Ward & Maazel LLP, alleges as follows for her complaint:

### NYPD PLACES PEACEFUL PROTESTER IN CHOKEHOLD



1.      Suddenly and without warning, NYPD Officer Edward Mendez and Lieutenant Philip Chan grabbed Deena Mohsen from behind.

2.      Ms. Mohsen was doing nothing wrong: she was stepping peacefully from the street onto the sidewalk without causing any disturbance. It was June 10, 2024. Ms. Mohsen, a Palestinian-American college student, had joined a peaceful protest in Manhattan to express her dismay at the ongoing violence against civilians in Gaza.

3.      Within seconds, Officer Mendez put Ms. Mohsen in a chokehold. He wrapped his arm around Ms. Mohsen's neck so tightly she could not breathe.

4.      Officer Mendez's chokehold is illegal in New York City—it is a misdemeanor punishable by up to one year in prison.

5.      After Officer Mendez placed Ms. Mohsen in an illegal chokehold, he and Lieutenant Chan handcuffed her.

6.      Lieutenant Chan then slammed Ms. Mohsen's head into a wall multiple times, even though Ms. Mohsen was handcuffed, standing still, and doing nothing to justify this violent assault.

7.      After six hours in custody, Officer Mendez and Lieutenant Chan released Ms. Mohsen with a Desk Appearance Ticket ordering her to go to court on June 27, 2024.

8.      When Ms. Mohsen arrived in court that day, she learned that the District Attorney's Office ("DA's Office") was declining to prosecute the case against her for reasons that were never explained to her.

9.      Defendants' violent assaults and wrongful arrest and prosecution caused Ms. Mohsen physical injuries and emotional distress that remain with her today.

**THE PARTIES**

10.     Plaintiff Deena Mohsen is a citizen of the United States. She is 21 years old and currently resides in Staten Island, New York.

11.     Defendant NYPD Officer Edward Mendez, shield number 689, was, at all times relevant to this Complaint, a police officer employed by the City of New York. In this role, Officer Mendez was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York. At all relevant times, he was acting within the scope of his employment and under color of state law.

12.     Defendant NYPD Lieutenant Philip Chan, tax registration number 000928052, was, at all times relevant to this Complaint, a police officer employed by the City of New York. In this role, Lieutenant Chan was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York. At all relevant times, he was acting within the scope of his employment and under color of state law.

13.     Defendant NYPD Officer Kwabena L. Fraser, shield number 23820, was, at all times relevant to this Complaint, a police officer employed by the City of New York. In this role, Officer Fraser was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York. At all relevant times, he was acting within the scope of his employment and under color of state law.

14.     Defendant NYPD Detective Christopher Giardina, shield number 4899, was, at all times relevant to this Complaint, a police officer employed by the City of New York. In this role, Detective Giardina was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York. At all relevant times, he was acting within the scope of his employment and under color of state law.

3

15.     Defendants NYPD Officers John Does #1-10, names and shield numbers unknown, were at all relevant times officers of the NYPD, and were duly appointed and acting officers, servants, employees, and/or agents of the City of New York. At all relevant times, Defendants Does #1-10 were acting within the scope of their employment and under color of state law. Defendants Does #1-10 are sued in their individual capacities.

16.     Defendant City of New York (the "City") is a municipal corporation duly organized under the laws of the State of New York. At all times relevant hereto, the City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters, including the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD and for ensuring that NYPD personnel, including Defendants Mendez and Chan, obey the laws of the United States and of the State of New York.

## JURISDICTION AND VENUE

17.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988.

18.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367(a).

19.     The acts complained of occurred in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

20.     Plaintiff demands trial by jury.

## FACTUAL ALLEGATIONS

21.     Ms. Mohsen is a Palestinian-American college student studying

psychology at the City University of New York, College of Staten Island.

***Ms. Mohsen Joins a Peaceful Protest on June 10, 2024***

22.    As of June 2024, the United Nations estimated that more than 37,000 people had been killed in Gaza during the Israeli invasion.[1]

23.    The United Nations also estimates that the Israeli invasion has displaced 1.9 million people in Gaza from their homes, representing approximately 90% of Gaza's population.[2]

24.    Like many Americans, Ms. Mohsen is deeply troubled by the destruction and loss of life in Gaza.

25.    On June 10, 2024, Ms. Mohsen decided to attend the protest in Union Square to lend her voice to the chorus of people speaking out on behalf of the Palestinian people.

26.    She drove from her home in Staten Island to Union Square to join the protest.

27.    Ms. Mohsen arrived at Union Square at approximately 5:00 p.m.

28.    Ms. Mohsen peacefully protested at Union Square for approximately ninety minutes.

29.    Ms. Mohsen then drove from Union Square to lower Manhattan to continue protesting at a second location on Wall Street.

30.    Ms. Mohsen's sister and a friend accompanied her in the car.

---

[1] Rasha Khatib et al., *Counting the Dead in Gaza: Difficult But Essential*, THE LANCET (July 10, 2024), https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(24)01169-3/fulltext.
[2] UNITED NATIONS RELIEF AND WORKS AGENCY, UNRWA SITUATION REPORT #148 ON THE HUMANITARIAN CRISIS IN THE GAZA STRIP AND THE WEST BANK, INCLUDING EAST JERUSALEM (Nov. 20, 2024), https://www.unrwa.org/resources/reports/unrwa-situation-report-148-situation-gaza-strip-and-west-bank-including-east-jerusalem.

31.     At approximately 7:00 p.m., Ms. Mohsen arrived at Wall Street between William Street and Broad Street, where the protest continued.

32.     The block of Wall Street between William Street and Broad Street is typically closed to car traffic.

33.     The block was closed to car traffic on June 10, 2024.

34.     Ms. Mohsen observed a heavy police presence at this location when she arrived.

35.     For the next thirty minutes, Ms. Mohsen peacefully protested on Wall Street between William Street and Broad Street.

***Officer Mendez and Lieutenant Chan Grab Ms. Mohsen from Behind, Without Warning***

36.     At approximately 7:35 p.m., Ms. Mohsen stepped onto the sidewalk from the street where the protest was taking place.

37.     She stepped onto the sidewalk because she wanted to walk to the front of the protest to film it.

38.     Immediately after Ms. Mohsen stepped onto the sidewalk, and without any warning, she felt two people grab her from behind by her arms and shoulders.

39.     The two people who grabbed her from behind did not identify themselves or say anything to Ms. Mohsen before they grabbed her.

40.     On information and belief, one of the people who grabbed her was Defendant NYPD Officer Edward Mendez.

41.     On information and belief, the other person who grabbed her was Defendant NYPD Lieutenant Philip Chan.

42.     No police officer said anything to Ms. Mohsen before Officer Mendez and

Lieutenant Chan grabbed her.

43.     No police officer gave Ms. Mohsen any warning before Officer Mendez and Lieutenant Chan grabbed her.

44.     No police officer ever told Ms. Mohsen that she should not step from the street onto the sidewalk.

45.     Ms. Mohsen did not hear any officer instruct any protester that they should not step from the street onto the sidewalk.

46.     Metal barricades separated the street from the sidewalk.

47.     However, there were openings between the barricades large enough to allow people to walk through the barricades freely.

48.     Ms. Mohsen stepped through an opening in the barricades to step onto the sidewalk.

49.     Shortly before Ms. Mohsen stepped onto the sidewalk, she observed another protester step from the street onto the sidewalk.

50.     She did not observe any police officer arrest that protester.

51.     Ms. Mohsen also observed many other protesters and civilians walking on the sidewalk while she was at the protest.

52.     She did not observe NYPD officers arrest anyone else who was walking on the sidewalk.

***Officer Mendez Places Ms. Mohsen in an Illegal Chokehold***

53.     Within seconds after Officer Mendez and Lieutenant Chan grabbed Ms. Mohsen, Officer Mendez placed Ms. Mohsen in a chokehold by wrapping his left arm around her neck and pressing his left forearm into the front of her neck.

54. Officer Mendez pressed his arm into Ms. Mohsen's neck so tightly that it restricted her ability to breathe.

55. Ms. Mohsen stated that she could not breathe while Officer Mendez held her in a chokehold.

56. On information and belief, Officer Mendez held Ms. Mohsen in the chokehold for at least three seconds.

57. The chokehold Officer Mendez used on Ms. Mohsen is a misdemeanor under New York City law.

58. N.Y.C. Administrative Code § 10-181(a) states:

> No person shall restrain an individual in a manner that restricts the flow of air or blood by compressing the windpipe or the carotid arteries on each side of the neck, or sitting, kneeling, or standing on the chest or back in a manner that compresses the diaphragm, in the course of effecting or attempting to effect an arrest.

59. N.Y.C. Administrative Code § 10-181(b) makes it a misdemeanor to use such a restraint procedure, punishable by up to one year in jail.

60. Officer Mendez's chokehold violated Section 10-181 because he restrained Ms. Mohsen in a manner that restricted the flow of air by compressing her windpipe.

61. Officer Mendez committed a misdemeanor against Ms. Mohsen under New York City law.

***Officer Mendez and Lieutenant Chan Handcuff Ms. Mohsen***

62. After Officer Mendez's illegal chokehold, Officer Mendez and Lieutenant Chan placed Ms. Mohsen in handcuffs.

63. The handcuffs were extremely tight and caused Ms. Mohsen significant pain.

8

64.     Ms. Mohsen stated that the handcuffs were too tight and causing pain, but no officer loosened her handcuffs in response.

65.     Officer Mendez and Lieutenant Chan had no basis whatsoever to arrest Ms. Mohsen.

66.     Officer Mendez and Lieutenant Chan had no basis to use any force against Ms. Mohsen.

67.     Ms. Mohsen was stepping peacefully onto the sidewalk and causing no disturbance when Officer Mendez and Lieutenant Chan violently arrested her.

68.     At no point did Ms. Mohsen resist a lawful order, or any order, from Officer Mendez, Lieutenant Chan, or any member of the NYPD.

***Lieutenant Chan Slams Ms. Mohsen's Head into a Wall While She Is Handcuffed***

69.     After placing her in handcuffs, Officer Mendez and Lieutenant Chan brought Ms. Mohsen to the wall of a building along the sidewalk on Wall Street.

70.     Officer Mendez and Lieutenant Chan held Ms. Mohsen so that her head faced the wall.

71.     Officer Mendez and Lieutenant Chan pushed Ms. Mohsen's body against the wall.

72.     Lieutenant Chan slammed Ms. Mohsen's head into the wall multiple times with significant force.

73.     When Lieutenant Chan slammed Ms. Mohsen's head into the wall, Ms. Mohsen was not resisting arrest or causing any disturbance.

74.     When Lieutenant Chan slammed Ms. Mohsen's head into the wall, she was handcuffed and standing still.

75.     Ms. Mohsen's face and forehead impacted the wall when Lieutenant Chan slammed her head into the wall.

76.     Ms. Mohsen felt like she experienced whiplash each time Lieutenant Chan slammed her head into the wall.

77.     After Officer Mendez's chokehold and Lieutenant Chan's assaults, Ms. Mohsen felt disoriented and felt pain in her head, neck, and shoulders.

***Defendants Fraser, Giardina, and Does #1-10 Do Nothing to Stop Mendez and Chan***

78.     On information and belief, NYPD Officer Kwabena Fraser, NYPD Detective Christopher Giardina, and NYPD Officers John Does #1-10 witnessed Officer Mendez and Lieutenant Chan grab Ms. Mohsen from behind when she stepped onto the sidewalk.

79.     On information and belief, Officer Fraser, Detective Giardina, and Does #1-10 saw that Ms. Mohsen was doing nothing wrong when Officer Mendez and Lieutenant Chan grabbed her.

80.     On information and belief, Officer Fraser, Detective Giardina, and Does #1-10 witnessed Officer Mendez place Ms. Mohsen in a chokehold.

81.     On information and belief, Officer Fraser, Detective Giardina, and Does #1-10 witnessed Officer Mendez and Lieutenant Chan place Ms. Mohsen in handcuffs.

82.     On information and belief, Officer Fraser, Detective Giardina, and Does #1-10 witnessed Lieutenant Chan slam Ms. Mohsen's head into the wall.

83.     On information and belief, Officer Fraser stood next to Officer Chan at the time that Officer Chan slammed Ms. Mohsen's head into the wall but did nothing to stop it.

84.     On information and belief, Detective Giardina filmed Ms. Mohsen's arrest with a handheld camera but did nothing to stop it.

85.     On information and belief, Officer Fraser, Detective Giardina, and Does #1-10 knew that Officer Mendez and Lieutenant Chan lacked probable cause to arrest Ms. Mohsen.

86.     On information and belief, Officer Fraser, Detective Giardina, and Does #1-10 knew that Officer Mendez and Lieutenant Chan lacked any basis to use any physical force against Ms. Mohsen, much less an illegal chokehold or repeatedly slamming Ms. Mohsen's head into the wall.

87.     On information and belief, Officer Fraser, Detective Giardina, and Does #1-10 witnessed Officer Mendez and Lieutenant Chan's arrest and assaults of Ms. Mohsen from a close enough distance that they could have intervened to stop Officer Mendez and Lieutenant Chan.

88.     On information and belief, Officer Fraser, Detective Giardina, and Does #1-10 did nothing to stop Officer Mendez and Lieutenant Chan's arrest and assaults of Ms. Mohsen.

89.     Instead, Officer Fraser, Detective Giardina, and Does #1-10 stood and watched Officer Mendez and Lieutenant Chan arrest and brutalize Ms. Mohsen.

***Ms. Mohsen Is Held in Custody for Over Six Hours***

90.     After Ms. Mohsen's arrest, NYPD officers escorted her from the sidewalk to a police van.

91.     The police van transported Ms. Mohsen to One Police Plaza.

92.     At approximately 8:30 p.m., Ms. Mohsen was placed in a holding cell at One Police Plaza.

93.     Ms. Mohsen was the only person in the holding cell, which she shared

with a dead cockroach.

94.    Ms. Mohsen's feelings of being disoriented after Officer Mendez's and Lieutenant Chan's assaults began to worsen in the holding cell.

95.    In the holding cell, Ms. Mohsen felt lightheaded, dizzy, and nauseous for several hours.

96.    At approximately 10:00 p.m., Officer Mendez briefly removed Ms. Mohsen from the holding cell to fingerprint her.

97.    Ms. Mohsen otherwise remained in the holding cell until approximately 1:50 a.m.

98.    Ms. Mohsen needed to use the bathroom for several hours while she was in the holding cell.

99.    However, she did not use the bathroom because a camera faced the toilet in the holding cell and she did not feel comfortable using the toilet in front of a camera due to her religious beliefs as a Muslim.

***Ms. Mohsen Is Released with a Desk Appearance Ticket***

100.    At approximately 1:50 a.m. on June 11, 2024, Officer Mendez and Lieutenant Chan, without probable cause and with malice, issued Ms. Mohsen a Desk Appearance Ticket (the "Original DAT").

101.    Ms. Mohsen was released from One Police Plaza shortly thereafter.

102.    The Original DAT charged Ms. Mohsen solely with Resisting Arrest.

103.    Approximately one week later, Ms. Mohsen received an updated Desk Appearance Ticket in the mail (the "Updated DAT").

104.    Lieutenant Chan issued the Updated DAT without probable cause and

with malice.

105.    The Updated DAT charged Ms. Mohsen with Obstructing Governmental Administration and Disorderly Conduct, in addition to Resisting Arrest.

106.    The Updated DAT directed Ms. Mohsen to appear at the Midtown Community Court on June 27, 2024, the same date and time as the Original DAT.

107.    The Original DAT charged Ms. Mohsen solely with resisting arrest, without any predicate crime for which she could have been resisting arrest.

***The District Attorney Declines to Prosecute Ms. Mohsen's Case***

108.    On June 27, 2024, Ms. Mohsen traveled to the Midtown Community Court as directed by the DAT.

109.    Upon arriving at the Midtown Community Court, Ms. Mohsen's assigned attorney gave her a Decline to Prosecute notice from the New York County District Attorney's Office stating that the DA's Office was declining to prosecute the charges against her.

***Ms. Mohsen's Lasting Physical and Emotional Damages***

110.    Ms. Mohsen has experienced significant physical and psychological distress because of Defendants' unprovoked and unjustified arrest and attack.

111.    On June 11, 2024, the day after her arrest, Ms. Mohsen traveled to the Maimonides Medical Center emergency room in Brooklyn.

112.    Ms. Mohsen arrived at the emergency room with a headache, dizziness, nausea, shoulder pain, back pain, and bruises and cuts to her upper body caused by Officer Mendez and Lieutenant Chan's violent assaults.

113.    Ms. Mohsen had also vomited prior to arriving at the emergency room that day.

114.    The emergency room diagnosed with her with a "likely concussion."

115.    Ms. Mohsen's symptoms have persisted for many months.

116.    For months after June 10, 2024, and continuing through today, Ms. Mohsen has experienced recurring headaches, neck pain, and shoulder pain.

117.    She also experienced wrist pain and nausea for several weeks after Officer Mendez and Lieutenant Chan's assaults.

118.    She has also experienced trouble sleeping and has struggled with stress, anxiety, and depression in the months since the officers' assaults.

119.    Ms. Mohsen also stopped working at her job as a grocery store food service manager because of the physical and mental health impacts of the officers' attacks, depriving her of income she had been using to support herself through college.

***Ms. Mohsen Timely Files a Notice of Claim***

120.    Within ninety days after Defendants' June 10, 2024 attack and arrest of Ms. Mohsen, Ms. Mohsen filed a Notice of Claim with the New York City Comptroller's Office.

121.    Ms. Mohsen attended and testified at the hearing required under Section 50-h of the General Municipal Law on January 13, 2025, by video conference.

122.    This action commenced within one year and ninety days of the events upon which the claims are based.

**FIRST CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Excessive Force
(Against Defendants Mendez and Chan)

123.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

124.    By reason of the foregoing, including grabbing Plaintiff from behind,

placing her in an illegal chokehold, forcefully restraining her, tightly handcuffing her, and repeatedly slamming her head into a wall, Defendants Mendez and Chan used unreasonable and excessive force under the circumstances they confronted.

125.    At all relevant times, Defendants Mendez and Chan acted under color of state law within the scope of their employment as police officers for the New York City Police Department.

126.    Plaintiff did not pose any threat to the safety of Defendants Mendez and Chan or anyone else. Plaintiff was unarmed and Plaintiff made no sudden movements.

127.    Defendants Mendez and Chan acted beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers to willfully, knowingly, and intentionally deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

128.    Defendants Mendez and Chan engaged in numerous gratuitous uses of force on Plaintiff that were vastly out of proportion to any danger Plaintiff could have posed, including (i) Defendant Mendez's use of an illegal chokehold; (ii) Lieutenant Chan repeatedly slamming Plaintiff's head into a wall; and (iii) Defendants Mendez and Chan pressing her body against a wall, forcefully grabbing her from behind, and tightly handcuffing her.

129.    Defendants Mendez and Chan failed to take any steps to prevent the excessive force used on Plaintiff or intervene in each other's excessive uses of force at any point during the assault, even though they had every opportunity to do so.

130.    Defendants Mendez and Chan's conduct was willful, wanton, and reckless.

131.    As a direct and proximate result of Defendants Mendez and Chan's

misconduct detailed above, Plaintiff sustained the damages hereinbefore alleged.

**SECOND CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
False Arrest
(Against Defendants Mendez and Chan)

132.    Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

133.    Defendants Mendez and Chan wrongfully and illegally arrested Plaintiff.

134.    Defendants Mendez and Chan's wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Plaintiff was carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

135.    The Original DAT issued by Defendants Mendez and Chan to Plaintiff upon her release from One Police Plaza on June 11, 2024, charged her only with resisting arrest, in violation of New York Penal Law Section 205.30, yet she was not charged with any predicate crime for which she could have been resisting arrest.

136.    In addition to resisting arrest, the Updated DAT issued by Lieutenant Mendez and sent to Ms. Mohsen by mail approximately one week later charged her with obstructing governmental administration, in violation of New York Penal Law Section 195.05, and disorderly conduct, in violation of New York Penal Law Section 240.20.

137.    Defendants Mendez and Chan knew they lacked probable cause to arrest Plaintiff for these crimes because Ms. Mohsen had stepped peacefully onto the sidewalk and was not causing any disturbance, Ms. Mohsen was not interfering with any government activity, nor disobeying any lawful police order when they arrested her.

138.    No reasonable officer would have believed there was probable cause to arrest Plaintiff under these circumstances.

16

139.    Defendants Mendez and Chan acted forcibly in apprehending and arresting Plaintiff.

140.    All this occurred without any fault or provocation on the part of Plaintiff.

141.    Defendants Mendez and Chan acted under pretense and color of state law. These acts were beyond the scope of Defendants' jurisdiction, without authority of law, and in abuse of their powers, and Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

142.    On information and belief, the conduct of Defendants Mendez and Chan was willful, wanton, and reckless.

143.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Failure to Intervene
(Against Defendants Fraser, Giardina, and John Does #1-10)

144.    Plaintiff repeats and realleges the above paragraphs as if they were fully set forth herein.

145.    NYPD officers have an affirmative duty to ensure the lawfulness of interactions between their fellow members of service and civilians, and to intervene when they observe another uniformed officer using excessive force against a civilian or wrongfully arresting a civilian.

146.    Defendants Kwabena Fraser, Christopher Giardina, and John Does #1-10 were present and witnessed their fellow officers, Defendants Mendez and Chan, using excessive force against Plaintiff.

147.    Defendants Fraser, Giardina, and Does #1-10 were present and witnessed their fellow officers, Defendants Mendez and Chan, place Ms. Mohsen under arrest without probable cause to arrest her for any crime.

148.    Defendants Fraser, Giardina, and Does #1-10 failed to take any action or make any effort to intervene in or halt the aforementioned unlawful actions and to protect Plaintiff.

149.    The failure to intervene by Defendants Fraser, Giardina, and Does #1-10 proximately caused the violation of Plaintiff's constitutional rights.

150.    As a direct and proximate cause of the failure to intervene by Defendants Fraser, Giardina, and Does #1-10, Plaintiff sustained the damages hereinbefore alleged.

**FOURTH CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Malicious Prosecution
(Against Defendants Mendez and Chan)

151.    Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

152.    Defendant Chan maliciously and without justification commenced criminal proceedings against Plaintiff.

153.    On June 11, 2024, Defendants Mendez and Chan issued the Original DAT to Plaintiff that charged her solely with resisting arrest.

154.    Defendant Chan subsequently issued the Updated DAT to Plaintiff that added charges of obstructing governmental administration and disorderly conduct.

155.    Defendants Mendez and Chan charged Plaintiff falsely, maliciously, in bad faith, and without probable cause.

156.    Defendants Mendez and Chan acted with malice, and knew or were

deliberately and recklessly indifferent to the truth that they lacked probable cause to arrest, issue a Desk Appearance Ticket to, and prosecute Plaintiff, and that no reliable information suggested she had committed any offense.

157.    No reasonable officer would have believed there was probable cause to prosecute Plaintiff under these circumstances.

158.    The Original DAT and Updated DAT required Plaintiff to appear in court on pain of criminal prosecution.

159.    On June 27, 2024, Plaintiff traveled to the Midtown Community Court for her court appearance in accordance with the directive in the DATs.

160.    The prosecution terminated in Plaintiff's favor when the New York County DA's Office issued a Delcine to Prosecute notice, which Ms. Mohsen's attorney provided to her on June 27, 2024, at the Midtown Community Court.

161.    Defendants Mendez and Chan acted under pretense and color of state law. They acted in abuse of their powers and beyond the scope of their authority and jurisdiction to willfully, knowingly, and intentionally deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

162.    Defendants Mendez and Chan's conduct was willful, wanton, and reckless.

163.    As a direct and proximate result of Defendant Chan's actions, Plaintiff sustained the damages hereinbefore alleged.

**FIFTH CAUSE OF ACTION**
Common Law Assault
(Against Defendants Mendez, Chan, and City of New York)

164.    Plaintiff repeats and realleges the above paragraphs as if the same were

fully set forth at length herein.

165.    By reason of the foregoing, Defendants Mendez and Chan, acting in their capacity as New York City Police Officers and within the scope of their employment as such, intentionally placed Plaintiff in apprehension of an imminent offensive contact and displayed the ability to effectuate such contact, and thereby committed a willful, unlawful, unwarranted, and intentional assault upon Plaintiff.

166.    The assault committed by Defendants Mendez and Chan was unnecessary and unwarranted in the performance of their duties as NYPD officers and constituted an unreasonable and excessive use of force.

167.    Defendant City of New York, as the employer of Defendants Mendez and Chan, is liable for their use of excessive force against Plaintiff under the doctrine of *respondeat superior*.

168.    As a direct and proximate result of the misconduct of Defendants Mendez and Chan detailed above, Plaintiff sustained the damages hereinbefore alleged.

### SIXTH CAUSE OF ACTION
Common Law Battery
(Against Defendants Mendez, Chan, and City of New York)

169.    Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

170.    By reason of the foregoing and by grabbing Plaintiff from behind, placing her in an illegal chokehold, forcefully restraining her, tightly handcuffing her, and repeatedly slamming her head into a wall, Defendants Mendez and Chan, acting in their capacity as NYPD officers, and within the scope of their employment as such, committed a willful, unlawful, unwarranted, and intentional battery upon Plaintiff.

171.     The battery committed by Defendants Mendez and Chan was unnecessary and unwarranted in the performance of their duties as NYPD officers and constituted an unreasonable and excessive use of force.

172.     Defendant City of New York, as employer of Defendants Mendez and Chan, is liable for their wrongdoing under the doctrine of *respondeat superior*.

173.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

**SEVENTH CAUSE OF ACTION**
Common Law Malicious Prosecution
(Against Defendants Mendez, Chan, and City of New York)

174.     Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

175.     Defendants Mendez and Chan, acting in their capacities as NYPD officers and within the scope of their employment as such, maliciously commenced criminal proceedings against Plaintiff.

176.     Defendants Mendez and Chan issued the Original DAT to Plaintiff that charged her solely with resisting arrest.

177.     Defendant Chan subsequently issued the Updated DAT to Plaintiff that added charges of obstructing governmental administration and disorderly conduct.

178.     Defendants Mendez and Chan charged Plaintiff falsely, maliciously, in bad faith, and without probable cause.

179.     No reasonable officer would have believed there was probable cause to prosecute Plaintiff under these circumstances.

180.     Defendant City, as employer of Defendants Mendez and Chan, is

responsible for its wrongdoing under the doctrine of *respondeat superior*.

181.    The prosecution terminated in Plaintiff's favor when the New York County DA's Office issued a Decline to Prosecute notice, which Ms. Mohsen's attorney provided to her on June 27, 2024, at the Midtown Community Court.

182.    As a direct and proximate result of Defendant Chan's actions, Plaintiff sustained the damages hereinbefore alleged.

**EIGHTH CAUSE OF ACTION**
Common Law False Arrest/False Imprisonment
(Against Defendants Mendez, Chan, and City of New York)

183.    Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

184.    On information and belief, Defendants Mendez and Chan wrongfully and illegally arrested Plaintiff.

185.    The wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Plaintiff was carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

186.    The Original DAT provided to Plaintiff upon her release from One Police Plaza on June 11, 2024, charged her only with resisting arrest, in violation of New York Penal Law Section 205.30; yet, she was not charged with any predicate crime for which she could have been resisting arrest.

187.    In addition to resisting arrest, the subsequent DAT sent to Ms. Mohsen by mail approximately one week later charged her with obstructing governmental administration, in violation of New York Penal Law Section 195.05, and disorderly conduct, in violation of New York Penal Law Section 240.20.

188.    Defendants Mendez and Chan knew they lacked probable cause to arrest Plaintiff for these crimes because Ms. Mohsen had stepped peacefully onto the sidewalk and was not causing any disturbance, interfering with any government activity, or disobeying any lawful police order when they arrested her.

189.    No reasonable officer would have believed there was probable cause to arrest Plaintiff under these circumstances.

190.    Defendants Mendez and Chan acted forcibly in apprehending and arresting Plaintiff.

191.    All this occurred without any fault or provocation on the part of Plaintiff.

192.    Defendants Mendez and Chan acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of Plaintiff's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards Plaintiff.

193.    Defendant City of New York, as employer of Defendants Mendez and Chan, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

194.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

*        *        *

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a.  Compensatory damages in an amount to be determined at trial;

b.  Punitive damages against Defendants Mendez and Chan in an amount to be determined at trial;

c.  Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

d.  Such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        March 27, 2025

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By: _____/s_____
        O. Andrew F. Wilson
        Max Selver
        1 Rockefeller Plaza, 8th Floor
        New York, New York 10020
        (212) 763-5000

        *Attorneys for Plaintiff Deena Mohsen*